**In re HAINES INDEPENDENT SCHOOL DISTRICT'S DELINQUENT TAXES.**

No. 6241–A.

United States District Court. D. Alaska.
First Division. Juneau.
April 12, 1950.

Howard D. Stabler, Juneau, for plaintiff.

R. E. Robertson, Juneau, Simon Hellenthal, Juneau, for defendant.

FOLTA, District Judge.

This is a suit brought by the Haines Independent School District under Section 16-1-122, to foreclose a lien for taxes for the year 1948 imposed under section 37-3-53, A.C.L.A.1949, for the maintenance and support of schools. The Veterans' Alaska Cooperative Company, as owner, and the Port Chilkoot Company as lessee, of the property known as the former Chilkoot Barracks, have filed objections to this procedure on every conceivable ground that the astuteness of counsel has been able to ferret out of the record or lack thereof. Manifestly, if the acts of taxing bodies composed of laymen had to pass the test sought to be imposed, government would come to a standstill.

The Haines Independent School District was incorporated on July 29, 1948, under the provisions of an act which requires an integration and coordination of certain of its functions with respect to the maintenance and support of schools with like functions of the incorporated town of Haines, which, under the order of incorporation, was included within the boundaries of the School District. A glance at the statutory provisions involved in this contro-

versy will suffice to clearly show that in view of the anticipated delay and difficulties incident to the organizations of school districts, it was neither expected nor contemplated that the provisions of Section 37-3-53, A.C.L.A.1949, should be literally complied with in the initial year. Indeed, to hold otherwise would necessarily result in invalidating the existence of all independent school districts the first year of their organization. Not only is such a result to be avoided but this Court has already held in Miller v. Anchorage Independent School District, 12 Alaska 591, that the provisions of the section referred to, so far as they prescribe the time for the performance of the acts specified are purely directory, and that in levying a tax for school purposes during the first year of its existence, a school district of the kind here dealt with has the power to provide by taxation for the discharge of obligations incurred by its predecessor even though such obligations antedate the organization of the school district. I see no reason to depart from the doctrine of that case and, hence, the contention of the protestants, based on the proposition that the provisions referred to are mandatory, must fail.

■ The witness Heinmiller, on behalf of the protestants, appeared before the Equalization Board on several occasions. On the first, he merely protested that a tax of more than $1,500 was beyond their financial ability. Later he objected to the assessed valuation of $357,090 placed on protestants' property. The Board reduced the assessment to $333,384. Manifestly, an objection on specific grounds constitutes a waiver of all other objections not jurisdictional in character.

■ Under Section 16-1-124, A.C.L.A.1949, the duplicate tax roll admitted into evidence is prima facie proof of the regularity and legality of the assessment and levy of the tax. The defects pointed out by the protestants are mere irregularities and, hence, they are insufficient to overcome the presumption of the legality of the assessment and

levy, except in one respect, which will be discussed later. I further find that the assessor, with knowledge of the properties and values, adopted the appraisals made by one Toner, who was employed by the School District as an expert appraiser, and from this concluded that the assessment was validly made. The remaining contention, is that the property was assessed beyond its actual value. The assessments were made according to a formula, which in addition to insuring a fair degree of uniformity, would undoubtedly be sufficient in ordinary circumstances to insure fair and just assessments. But it appears the assessor failed to make any allowance for the peculiar nature of the property involved which consists of approximately 340 acres, 86 buildings, water and electrical systems, etc., all of which, while operated as a military post, was a unitary enterprise. After its sale in 1946 as surplus property for $105,000 to the veterans organization for resettlement of veterans and the promotion of local industry, it would appear that, so far as the buildings are concerned, they assumed an individual character wholly independent of the remainder of the property, with a corresponding diminution in value. The situation then was not unlike the familiar one which confronts the owners engaged in liquidating the assets of an erstwhile going concern. Stripped of its value as an integral part of the plant, and considered separately and apart therefrom, each component part or property of the enterprise has little, if any, more than its intrinsic value. Moreover, it appears that no allowance was made for obsolescence due not only to radical changes in architectural design of modern buildings, resulting in far less cubical capacity with corresponding decrease in the cost of maintenance and operation, but also to the lack of demand and consequently income from rentals. Notwithstanding, these buildings were assessed at $245,190. Subtracting from this $29,535, representing the assessed valuation of the Port Chilkoot Terminal property, which was erroneously included, leaves $215,574. The water and

electrical systems were equalized at $22,500. The factors referred to, which were not given consideration in arriving at these assessments, would also affect the value of the utilities. I find that the valuations placed on these two species of property, aggregating $238,074, should be reduced by 40%.

Findings and decree in accordance herewith, may be prepared and submitted.