## In re DELINQUENT TAXES IN TOWN OF SKAGWAY, ALASKA.
### No. 6835-A.

District Court, Alaska.
First Division, Juneau.
Oct. 21, 1953.

Howard D. Stabler, Juneau, Alaska, for petitioner.

H. L. Faulkner (of Faulkner, Banfield & Boochever), Juneau, Alaska, for protestant.

FOLTA, District Judge.

The City of Skagway has petitioned for an order foreclosing its tax lien on, and directing the sale of, the property listed in the delinquent tax roll attached to the petition. Five items of real property of the Pacific & Artic Railway & Navigation Co., the protestant here, are listed. The protestant has paid the amount that would have been due had the assessed valuations placed thereon in 1949 not been increased for 1952, but objects to the assessment and tax on the following grounds:

(1) That the tax ordinance is void because it was neither approved by the mayor nor published;

(2) That the valuations placed on the property involved for the year 1952 were made in bad faith and are grossly disproportionate and in excess of actual value;

(3) That there was no equalization of assessed valuations in 1952;

(4) That the two items of property consisting of hangars were not in existence on August 10, 1952—the date tax liability attached.

■ The city contends that since the only objection made before the Board of Equalization is that the valuations placed on its property were excessive, the protestants are limited in this court to that objection, by virtue of the provision in Section 16-1-124 that:

> "At such hearing the duplicate tax roll shall be prima facie evidence of the regularity and legality of the assessment and levy of the tax and that the same is unpaid, and no objection to the valuation of the property, the manner of the assessment and levy of the tax, or any of the subsequent proceedings shall be entertained by the court which does not affect the substantial rights of the party interposing the objection."

From the foregoing it would appear that any objection may be made that affects the substantial rights of the taxpayer. While the point is made that no objection may be heard which was not made before the Board of Equalization, it is neither briefed nor argued. Undoubtedly, it would conduce to orderly procedure and expedition to limit the objections to those made before the Board of Equalization, but since jurisdictional objections may not be waived, I am inclined to follow my decision in Re Haines Independent School District, 12 Alaska 662, and hold that the objections meet the requirement of the statute quoted.

■ According to the records of the city the tax ordinance was passed October 2, 1916. The certified copy, protestant's exhibit "C", which was substituted for the original, shows that the ordinance was signed by the mayor and attested by the clerk. Unfortunately, it is not identical. The words "under suspension of rules and approved" appear in the original with a line in ink drawn through them, if I recall correctly. This is the basis of the protestant's argument that the ordinance has not been approved. Upon examining the original the Court concluded that the line was inadvertantly extended across the word "approved" and the Court is still of that opinion. It is inconceivable that if approval was not intended, the mayor would have signed it, the clerk would have attested his signature and the city would have operated under it for 37 years.

■ The points are also made that there is no record of the publication of the ordinance and of the presence of five councilmen at its passage, as required by the law in effect at that time, Section 627, C.L.A.1913. The record shows that four councilmen voted in favor of the enactment of the ordinance and that the fifth councilman, who was ex officio mayor, signed it. I am of the opinion that the attack on the validity of the ordinance cannot be sustained because the protestant has failed to overcome the presumptions that ordinances are properly enacted, that official acts are properly performed, including signature and approval, and that ordinances are valid, particularly after the lapse of many years. 5 and 6 McQuillin Municipal Corporations, 3d Ed., Secs. 14.03, 16.10, 16.-37, 16.39, 20.06, 20.07, 20.08, 22.30, 22.34 and 22.35. Moreover, it would appear that the protestant is estopped from challenging the validity of the ordinance, 6 McQuillin Municipal Corporations, 3d Ed., Sec. 20.12.

■ The property involved in this controversy consists of the protestant's wharf at the southern terminus of its railroad, the heating and water systems

maintained in connection with the operation of the railroad, and two hangars, the existence of which on August 10, 1952, is in dispute.

In 1949 the city employed Felix Toner, a disinterested nonresident to revalue all property in Skagway. It appears to be conceded that he is an expert, so far as valuation of property for tax purposes is concerned. The work involved an inspection of all property, the preparation of maps and records, and listing, description and evaluation of each item and tract according to a formula, the principal factors of which were the replacement cost in 1944, cubic measurement, actual depreciation and obsolescence. The protestant's wharf was valued at $168,000, its heating plant at $4,140 and its water system at $5,000. The Toner valuations were approved and used as the basis for assessments in 1949, 1950 and 1951. In 1952, however, without any general revaluation or readjustment of assessments, the valuations placed on the specified property were increased to $500,000, $14,140 and $15,000 respectively.

I find that the hangar on Lot 7 Block 114 had been dismantled before August 10, the tax assessment date, but I find that the protestant failed to show that the other hangar had been partially dismantled on that date.

I also find that the only other real property upon which valuations had been increased for 1952, and then only slightly, consists of two lots of unnamed individuals and the property of the Standard Oil Company.

The contention that the valuations are disproportionate and were made in bad faith appears to be based on the grounds that they were more than trebled; that the valuation of one item of personal property of the protestant was increased from $105,000 to $1,200,000; that the only other properties upon which the valuations were increased and then only slightly, consists of two lots of individual taxpayers and the property of the Standard Oil Company; that the increased valuations were the result of the enmity of a councilman who was formerly employed by the protestant. In support of the foregoing contention, it is argued that the valuations made by Toner resulted in equality and uniformity; that since they were based on a fixed formula, the trebling of evaluations placed on protestant's property amounts to a repudiation of the formula and requires the revaluation of all properties and equalization of the re-assessments.

Upon behalf of the city, the valuation placed upon the wharf is sought to be justified on the basis of replacement cost in 1952, which concededly is approximately 100% higher than in 1944, upon which the Toner valuations were based, and also upon an estimate of 5,100 piles, whereas the correct number is 3,217. Manifestly, such a basis cannot be substituted for that employed by Toner without producing gross inequality and lack of uniformity.

The revaluation of the heating system is sought to be justified on the ground that Toner's valuations did not include the plant itself but only the structure which housed it. Toner, however, testified that the valuations placed on the heating and water systems as distinguished from the structures which housed them, were allocated to the buildings served by them.

Viewing the evidence in its entirety, I am inclined to the opinion that, although the valuations placed upon the protestant's property for 1952 might not be in excess of actual value, they nevertheless resulted in increasing its burden to such a degree as to violate the requirements of equality and uniformity and that therefore its objections should be sustained. This conclusion makes it unnecessary to consider the other contentions.